PAUL T. BLAIR *vs.* BOARD OF SELECTMEN OF BROOKLINE & others.[1]
No. 87-1439. August 15, 1988. *Police,* Compensation, Incapacity, Sick
leave, Retirement. *Municipal Corporations,* Police. *Retirement. Public Em-
ployment,* Retirement, Accidental disability retirement.

This matter was before this court in *Blair* v. *Selectmen of Brookline,*
24 Mass. App. Ct. 261 (1987, hereafter the 1987 case or decision). There
the basic facts were stated. That 1987 decision (at 265) established that
Blair, formerly a police officer of Brookline, had become entitled (as of
August 23, 1985) to benefits for sick leave pay under G. L. c. 41, § 111F
(for text see appendix to this rescript), by reason of hypertension caused
by "specific [identified] events in the performance of his duties" as a police
officer.

The town officials attached to their brief in the 1987 case a letter from
the Brookline retirement board to Blair, dated October 1, 1986, advising
Blair "that on June 25, 1986, the board had voted to grant him an accidental
disability retirement allowance, 'effective midnight, January 20, 1986,' and
that the board's decision had been approved by the Public Employee Retire-
ment Administration Commissioner . . . [the PERA Commissioner] on
September 16, 1986." 24 Mass. App. Ct. at 266. The 1987 decision pointed
out (*ibid.*) that the parties had not sought leave of this court (while that
appeal was pending) to present to the trial judge any "issue of the effective
date of . . . [Blair's] retirement." Because the record then properly before
this court was inadequate to enable it to determine that issue, the 1987
decision (at 266-267) left "it to the parties to raise the issue on the remand
of . . . [the] matter for computation of the amount of compensation due"
to Blair. The 1987 decision remanded the case to the Superior Court to
compute "the dollar amount of compensation due . . . [to Blair] under G. L.
c. 41, § 111F, from August 23, 1985, up to the date of . . . [Blair's]
accidental disability retirement, less any credit due" to the town for benefits
paid, together with appropriate interest and other adjustments.

Pursuant to that remand, a judge of the Superior Court has considered
the papers not considered in the 1987 decision. See 24 Mass. App. Ct. at
266. She issued a memorandum and order on July 1, 1987, amending the
earlier judgment of another judge, entered prior to the remand by this court,
by specifying September 16, 1986, as the date as of which Blair should be
regarded as no longer receiving regular compensation.

The town officials contended before the judge in June and July, 1987,
that the date should be January 20, 1986, the date *as of* which the Brookline
retirement board had voted retroactively an accidental disability retirement
for Blair. Blair contended that the final date of regular compensation should
be either September 16, 1986, when Blair's retirement was approved finally

---

[1] The police chief and the treasurer of Brookline. The defendants (and the Brook-
line retirement board) are for convenience sometimes referred to collectively as "the
town officials."

by the PERA commissioner, or a later date for which we see no justification and which we do not discuss.

The statutory situation is obscure like many aspects of the frequently amended G. L. cc. 32 and 41, especially with respect to retirement. See *Namay* v. *Contributory Retirement Appeal Bd.*, 19 Mass. App. Ct. 456, 463 (1985); *Fedorchuk* v. *Contributory Retirement Appeal Bd.*, *ante* 916, 918 (1988). The town officials seem to rely on G. L. c. 32, § 7(1) (as appearing in St. 1982, c. 630, § 18), which (with respect to an accidental disability retirement) provides that a person "who becomes totally and permanently incapacitated for further duty . . . upon . . . [the] application by the head of his department after a hearing, if requested, . . . shall be retired for accidental disability *as of a date which shall be specified in such application*" (emphasis supplied). This provision is to be contrasted with the provisions of c. 41, § 111F, the statute which, for reasons stated below, seems to us to be controlling.

No copy of any application for Blair's retirement is reproduced in this record. The record, however, does contain a copy of the letter, already mentioned, dated October 1, 1986, from an employee of the Brookline retirement board to Blair informing Blair of a vote of the board on June 25, 1986, subject to PERA approval, to grant him a disability retirement allowance "effective midnight, January 20, 1986." Communications from PERA to the Brookline board were also attached.

The judge in her memorandum of July 1, 1987, points out that G. L. c. 32, § 7, provides that no disability retirement shall be allowed until after a review by the PERA commissioner. The judge apparently decided for this reason that Blair's retirement could not become final, for purposes of c. 41, § 111F, until that approval took place. The meaning of the words in § 111F, "after such police officer . . . has been retired . . . in accordance with law," is not free from doubt, but in view of the language and the whole history of the relevant statutes (see appendix to this rescript, par. 2) we hold that the Superior Court judge correctly treated the final PERA approval of Blair's retirement as the date of his retirement "in accordance with law."

The 1982 requirement for the approval of disability pensions by PERA makes irrelevant earlier 1956 opinions of the Attorney General referred to by the town officials and reprinted as an annex to their brief. On this record, there is no showing of any earlier date than September 16, 1986, at which Blair's retirement is required to be treated as final. If the Legislature desires a result other than that reached by the Superior Court judge (which we affirm), that change, of course, is open to it. We assume that counsel in the present case and interested officials of PERA will consider whether any legislative changes should be sought.

The result appears to be consistent with cases decided under G. L. c. 41, § 111F, which indicate that one properly authorized to receive benefits under that section remains so authorized until (1) his retirement (or other

separation from town employment), (2) he is accepted for pension, or (3) he recovers from his disability. See *Jones* v. *Wayland*, 374 Mass. 249, 254-261 (1978), *S.C.*; 380 Mass. 110 (1980). In these cases Officer Jones's authorization to receive benefits under § 111F was recognized to have been terminated by his resignation. It was also held that an allowance to Officer Jones under G. L. c. 85H had been properly denied, but the propriety of paying benefits under § 111F was approved up to the date of his resignation. See for a discussion of the types of events which would terminate the receipt of benefits under § 111F, *Hennessey* v. *Bridgewater,* 388 Mass. 219, 225-227 (1983). See also *Montague* v. *Commissioner of the Metropolitan Dist. Commn.*, 9 Mass. App. Ct. 62, 65 (1980), where § 111F is distinguished from the statute then under consideration by this court in a manner consistent with our interpretation of § 111F. Compare *Carvalho* v. *Cambridge*, 372 Mass. 464 (1977), where the parties did not dispute the date of termination of § 111F benefits, and where the case, in any event, was decided prior to the 1982 requirement of PERA approval of disability retirements as the last step in such a retirement.

The Superior Court judge's memorandum and order of July 1, 1987, was further amended (in respects not now significant) on September 16, 1987. The town officials make no contention that the computation of the compensation owing to Blair as set out in the order of July 1, 1987, as amended in the judgment of September 16, 1987, is incorrect in any respect except as to the continuance of § 111F benefits to September 16, 1986, already discussed. Accordingly, the judgment, as so amended on September 16, 1987, is affirmed.

*So ordered.*

APPENDIX.

1. Significant language of G. L. c. 41, § 111F, as appearing in St. 1964, c. 149, reads (emphasis supplied):

"Whenever a police officer . . . of a . . . town . . . is incapacitated for duty because of injury sustained in the performance of his duty without fault of his own, . . . he shall be granted leave without loss of pay for the period of such incapacity; provided, that *no such leave shall be granted for any period after such police officer . . . has been retired or pensioned in accordance with law* or for any period after a physician designated by the board or officer authorized to appoint police officers . . . in such . . . town . . . determines that such incapacity no longer exists. All amounts payable under this section shall be paid at the same time and in the same manner as, and for all purposes shall be deemed to be, the *regular compensation* of such police officer . . . ."

2. Specification by the Superior Court judge of the provisions of G. L. c. 32 requiring PERA approval would have disclosed that St. 1982, c. 630, not only created PERA itself, §§ 1 and 2 (the latter, especially, as inserting

G. L. c. 7, § 50[h]), and § 7 (inserting in c. 32, § 1, a definition of "Commissioner" as the PERA Commissioner), but also (by § 18) the provision now found in c. 32, § 7(1), "No such retirement shall be allowed unless the board [i.e., the retirement board having jurisdiction of the employee], after a review of the evidence it deems appropriate, and after a review by the commissioner [of PERA] pursuant to the provisions of section twenty-one . . . ." General Laws, c. 32, § 21(1) (d), as revised by § 25 of St. 1982, c. 630, provided (inter alia) that the commissioner of PERA "is authorized to review all accidental . . . disability pensions granted by the retirement boards."

*David Lee Turner* for the defendants.
*Gerald F. Blair* for the plaintiff.